DeQuae WOODS, Plaintiff/Respondent,

v.

QC FINANCIAL SERVICES, INC.,
d/b/a Quik Cash, Defen-
dant/Appellant.

No. ED 90949.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 23, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 24, 2009.

Application for Transfer Denied
May 5, 2009.

Erich Vincent Vieth, John G. Simon, John Campbell, Debra Kay Lumpkins, St. Louis, for Plaintiff/Respondent.

Dana M. Mehrer, Amy Brown, Pierre H. Bergeron, Kansas City, for Respondent/Appellant.

SHERRI B. SULLIVAN, J.

*Introduction*

QC Financial Services, Inc., d/b/a Quik Cash (Appellant) appeals from the trial court's Order and Judgment granting Count I of DeQuae Woods' (Respondent) petition, in part, seeking a declaratory judgment that Appellant's arbitration clause is unconscionable, and denying Appellant's motion to dismiss Respondent's case. We affirm.

*Factual and Procedural Background*

Appellant is a payday lender, with whom Respondent entered into a loan contract on several occasions. Respondent filed a petition alleging that Appellant has committed several violations of Missouri statutes governing payday lenders, and seeking class certification on behalf of those similarly situated to Respondent. Appellant sought dismissal of Respondent's petition and asked the trial court to compel Respondent to engage in individual arbitration with Appellant as provided for in the mandatory arbitration clause contained in the loan contract. The pertinent portion of this mandatory arbitration clause provides as follows:

2. *You acknowledge and agree that by entering into this Arbitration Provision:*

(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES;

(b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES; and

(c) **YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST U.S. AND/OR RELATED THIRD PARTIES.**

3. **Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you.** *THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.*

[Emphasis of waiver added].

After considering evidence, testimony and argument, the trial court granted Respondent's request for declaratory judgment in part, finding that those portions of Appellant's arbitration clause prohibiting class arbitration were unconscionable, and severed them. The trial court also granted Appellant's motion to dismiss in part, so that the matter could proceed to arbitration to determine whether Respondent satisfies the requisite criteria for the matter to proceed as a class arbitration. The trial court denied Appellant's motion to dismiss in part, specifically the part that requested Respondent be forced to participate in individual arbitration. The trial court ordered that Respondent's claim be sent to the American Arbitration Association, per Respondent's choice, as provided for in the arbitration clause, without any prohibition against class arbitration, and declared that a panel of arbitrators will determine whether a class should be certified and damages awarded, pursuant to Missouri law.

This appeal follows.

*Points Relied On*

In its first point, Appellant claims that the trial court erred as a matter of law by holding that Respondent need not prove procedural unconscionability.

In its second point, Appellant asserts that the trial court erred in refusing to enforce the arbitration agreement as procedurally unconscionable, because the font size used complies with statute and Respondent signed the contract without any misrepresentations, hurry, or duress from Appellant.

In its third point, Appellant contends that the trial court erred in refusing to enforce the class action waiver because the arbitration agreement was not substantively unconscionable, in that (1) it does not limit Respondent's substantive remedies or her ability to pursue those remedies, and provides that Appellant will pay all arbitration costs, (2) the procedural ability to file a class action can be waived by contract under Missouri law, (3) the trial court

relied upon inadmissible expert attorney testimony, and (4) the Federal Arbitration Act (FAA) preempts the trial court's holding as Missouri law does not bar class action waivers in all consumer contracts.

In its fourth point, Appellant states that the trial court erred in severing the class action waiver from the arbitration agreement because the waiver is essential to the contractual bargain, in that it is integral to Appellant's promises, including the promise to pay all arbitration fees, and the contract does not contain a severance clause.

In its fifth point, Appellant avers that the trial court erred in granting Respondent's request for a declaratory judgment, because Respondent never moved for judgment, and summary judgment was not proper in that the court did not construe all reasonable inferences in Appellant's favor, nor did Appellant have notice or an opportunity to defend a request for judgment.

## Standard of Review

When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case. *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo.banc 2001). That is, the trial court's decision should be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

On the other hand, an appellate court's review of the arbitrability of a dispute is *de novo*. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo.banc 2006). Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate. *Fiordelisi v. Mt. Pleasant, LLC*, 254 S.W.3d 120, 125 (Mo.App. E.D.2008).

## Discussion

We discuss Appellant's points out of sequence for organizational purposes.

### Point V—Motion for and Propriety of Summary Judgment

Appellant maintains that the trial court granted summary judgment without according Appellant the benefit of all reasonable inferences from the record, as required by *ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). This argument is implausible. The trial court did not grant a summary judgment. The court granted a declaratory judgment. Appellant also claims that the trial court acted "on its own initiative to grant judgment on [Respondent's] claim that the contract is unconscionable despite the fact that she never moved for any such form of relief." Again, Count I of Respondent's petition asked for a declaratory judgment finding the mandatory arbitration clause unenforceable. The trial court found in favor of Respondent to the extent the mandatory arbitration clause prohibited class action, but ordered arbitration, essentially granting Appellant's motion to compel arbitration. The court did so after hearing extensive argument and testimony and considering the parties' evidence.

Point V is without merit and therefore denied.

### Points I and II—Procedural Unconscionability

"It is suggested that there are procedural and substantive aspects of unconscionability, the former relating to the formalities of the making of the contract and the latter to the specific contract terms." *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308 (Mo.App.

W.D.2005); *Bracey v. Monsanto Co.*, 823 S.W.2d 946, 950 (Mo.banc 1992). "'[P]rocedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position.'" *Whitney*, 173 S.W.3d at 308, quoting *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo.App. W.D.1979). "'By substantive unconscionability is meant an undue harshness in the contract terms themselves.'" *Whitney*, 173 S.W.3d at 308, quoting *King Louie*, 597 S.W.2d at 634. "'Generally there must be both procedural and also substantive unconscionability before a contract or a clause can be voided.'" *Whitney*, 173 S.W.3d at 308, quoting *King Louie*, 597 S.W.2d at 634. Furthermore, "it has been suggested . . . that there be a balancing between the substantive and procedural aspects, and that if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability, and that the same 'sliding scale' be applied if there be great substantive unconscionability but little procedural unconscionability." *Whitney*, 173 S.W.3d at 308, quoting *King Louie*, 597 S.W.2d at 634.

Appellant maintains that the trial court erred by holding that Respondent need not prove procedural unconscionability. Appellant asserts that "[t]he trial court, however, believed that a recent Missouri Supreme Court decision, *Vincent v. Schneider*, eliminated this requirement so that only substantive unconscionability was required."

This assertion is a mystery to us, as the trial court discussed procedural unconscionability extensively in its opinion, and found, using an objective reasonable person standard,[1] that there was procedural unconscionability present in this case. Appellant also misconstrues the trial court's characterization of the holding of *Vincent v. Schneider*. The trial court stated, verbatim, in its Order and Judgment, that

> [u]nder Missouri law, substantive unconscionability alone may be enough to invalidate offensive clauses. *See Vincent v. Schneider*, 194 S.W.3d 853 (Mo. en banc 2006). In this case, however, this Court finds that the QC contract was both procedurally and substantively unconscionable.

The trial court did not state that *Vincent* eliminated the requirement of procedural unconscionability.

▉ Appellant claims that the trial court erred in finding the arbitration agreement procedurally unconscionable, because the font size used complies with statute and Respondent signed the contract without any misrepresentations, hurry, or duress from Appellant.

First, Appellant's argument regarding the lack of its use of misrepresentations, hurry, or duress with regard to Respondent, specifically, ignores the objective nature of the test for 'reasonable expectations,' which is not addressed to the subjective expectations of an individual adherent, but to the average member of the public who accepts such a contract. *Swain*, 128 S.W.3d at 107; *Hartland Computer*, 770 S.W.2d at 527.

---

1. "'Because standardized contracts address the mass of users, the test for 'reasonable expectations' is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.'" *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo. App. E.D.2003), quoting *Hartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.*, 770 S.W.2d 525, 527 (Mo.App. E.D.1989).

Second, font size, misrepresentation, duress, or hurrying in the signing of a contract are not the only indicia of procedural unconscionability. "[A]s with all contracts, courts seek to enforce the reasonable expectations of the parties garnered not only from the words of a standardized form imposed by its proponent, but from the totality of the circumstances surrounding the transaction." *Hartland Computer*, 770 S.W.2d at 527; see also *Whitney*, 173 S.W.3d at 310.

In the instant case, Appellant is in a much superior bargaining position, the contract is presented on a take it or leave it basis, and there is no negotiation between the parties. See *Whitney*, 173 S.W.3d at 310. Appellant admits it has never negotiated the terms of the contract with any of the 400,000 customers with whom it has entered into the contract approximately 2.8 million times over the five years prior to the trial court proceeding. Furthermore, the arbitration clause is a form contract. Appellant is a large, national company that does business with people who borrow money, *against their next paycheck*, at interest rates exceeding 400 percent. There is no question that Appellant is in a much superior bargaining position than its customers with regard to this contract.

Appellant maintains that the font size used in the clause is not fine print. Respondent's expert testified that the spacing of the lines in the clause were so close that words from adjacent lines touched and an optical scanner was unable to make out the characters. The clause contains more than 1,300 words made to fit onto one page. When presented in a double-spaced, 12 point Times New Roman font, which is how this opinion is presented, the clause is six pages long.

Based on the foregoing, the trial court's finding of procedural unconscionability is supported by substantial evidence. Points I and II are denied.

*Point III—Substantive Unconscionability*

Here, we are considering the terms of the mandatory arbitration clause that purport to prohibit adherents' action as a class, not the entire loan contract. See *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 14, 912 A.2d 88, 96 (N.J.Super.Ct.App.Div.2006) (because the "distinct class-arbitration waivers" are within the arbitration clauses, they are "part of the arbitration agreements, and not part of the contracts as a whole ... we are empowered to address" the issue of unconscionability directed at such waivers).

It has been established that the mandatory arbitration clause at issue in this case is a form contract. We consider the reasonable expectations of the average consumer when evaluating a form contract and consider the totality of the circumstances when weighing the evidence as to whether the contract is substantively unconscionable. *Whitney*, 173 S.W.3d at 309. Substantive unconscionability deals with an undue harshness in the contract terms themselves. *Id.* at 308. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed at the time the contract was made. *Cooper v. QC Financial Services, Inc.*, 503 F.Supp.2d 1266, 1279 (D.Ariz.2007). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* (citation omitted).

The arbitration clause at issue is a contract of adhesion. "An adhesion con-

tract is typically a standardized contract form 'offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form of contract . . .' [t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 840 P.2d 1013, 1015–1016 (1992), quoting *Wheeler v. St. Joseph Hosp.*, 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (1976).

The determination that a contract is one of adhesion, however, "is the beginning, not the end, of the inquiry" into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations. *Muhammad*, 189 N.J. at 15. (citation omitted). A sharpened inquiry concerning unconscionability is necessary when a contract of adhesion is involved. *Id.* In determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take it or leave it nature or the standardized form of the document, but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests affected by the contract. *Id.* at 15–16.

As discussed *supra*, with regard to procedural unconscionability, the arbitration terms in Appellant's loan contract were offered on a take it or leave it basis. Appellant did not explain the arbitration terms to Respondent, but merely represented to Respondent that she was required to sign the agreement with the arbitration terms in order to get the loan. Therefore, Respondent, and other adherents to Appellant's loan contracts, have no realistic choice as to the terms of the arbitration provision.

The subject matter of the contract at issue is the lending of money, to be paid back, of course, with interest. However, these loan contracts are not ordinary bank loans, based on collateral. Rather, the loans disseminated by Appellant are against its customers' paychecks, suggesting that there is a great deal of economic compulsion motivating Appellant's customers, in that they are living paycheck to paycheck, and not even that, since Appellant's business is based on the fact that its customers need loans before they even receive their next paycheck, and thus are forced by dire personal economic circumstances to patronize Appellant's business and incur interest rates of up to 400 percent.

Appellant claims that the class action waiver in the mandatory arbitration clause is not substantively unconscionable because it does not limit Respondent's substantive remedies or her ability to pursue those remedies, and provides that Appellant will pay all arbitration costs.

However, the unconscionability issue in this matter centers on access to a class-wide proceeding in the arbitral setting. A class-action waiver in a payday loan contract reduces the possibility of attracting competent counsel to advance the cause of action, and thus can functionally exculpate wrongful conduct. *Muhammad*, 189 N.J. at 21, 912 A.2d at 100. Appellant maintains that Missouri courts have consistently found that the availability of attorney's fees provides a strong incentive for attorneys to take an individual's case if the individual has a legitimate claim. However, the availability of attorney's fees and costs is illusory if it is unlikely that counsel would be willing to undertake the representation. *Id.* Also, the class action waiver can prevent an aggregate recovery

that can serve as a source of contingency fees for potential attorneys in light of the small dollar amount at issue. *Id.*

Appellant asserts that the trial court's decision to deny mandatory individual arbitration flowed, "in large measure," from its reliance on the testimony of Respondent's attorney experts to the effect that they would not take a case with damages as small as Respondent's. We are not convinced that the trial court relied "in large measure" on such testimony. In any event, we do not. Furthermore, there was ample factual and legal reasoning in the trial court's opinion supporting its decision other than the testimony of Respondent's attorney expert witnesses.

Appellant argues that the procedural ability to file a class action can be waived by contract under Missouri law. As noted by Appellant in its brief, it is a longstanding rule that, unless the waiver is against public policy, "a party may waive the provision of a contract or statute made for his benefit." *Ross–Langford v. Mercantile Town Mut. Ins. Co.,* 97 Mo.App. 79, 71 S.W. 720, 723 (Mo.App.K.C.1902). Hence, in this proceeding, we are deciding whether the waiver of class action in the loan contract is unconscionable, and thus, contrary to public policy.

The terms of the arbitration provision in Appellant's loan contract leave consumers like Respondent with no meaningful avenue of redress through the courts. Additionally, the arbitration terms are advantageous to Appellant by prohibiting Respondent and others from initiating or participating in an action against Appellant. By denying class arbitration, Appellant "has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone ... this is an advantage that inures only to" Appellant.

See *Powertel, Inc. v. Bexley,* 743 So.2d 570, 576 (Fla.App.1999).

■ The provision also insulates Appellant from the spectre of a ruling that would have precedential effect and value, such as application of collateral estoppel, on Appellant's business practice as a whole. *Cooper,* 503 F.Supp.2d at 1288. Individualizing each claim absolutely and completely insulates and immunizes Appellant from scrutiny and accountability for its business practices and " 'also serves as a disincentive for [Appellant] ... to avoid the type of conduct that might lead to class action litigation in the first place.' " *Discover Bank v. Superior Court,* 36 Cal.4th 148, 159, 30 Cal.Rptr.3d 76, 84, 113 P.3d 1100, 1108 (2005), quoting *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1101, 118 Cal.Rptr.2d 862, 868 (2002). That the arbitration result is binding on Appellant means "that any remedies obtained will only pertain to that single customer without collateral estoppel effect." *Szetela,* 118 Cal.Rptr.2d at 868. "[B]ecause ... damages in consumer cases are often small and because '[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit ... the class action is often the only effective way to halt and redress such exploitation.' " *Discover Bank,* 36 Cal.4th at 156, 30 Cal.Rptr.3d at 82, 113 P.3d at 1105, quoting *Linder v. Thrifty Oil Co.,* 23 Cal.4th 429, 97 Cal.Rptr.2d 179, 2 P.3d 27, 39 (2000).

■ Finally, Appellant claims that the 9 U.S.C. Section 2 of the FAA preempts the trial court's holding as Missouri law does not bar class action waivers in all consumer contracts. In support of its claim, Appellant cites *Gay v. CreditInform,* 511 F.3d 369, 394 (3d Cir.2007). The *Gay* Court stated:

[T]he text of Section 2 provides the touchstone for choosing between state-

law principles and the principles of federal common law envisioned by the passage of [the FAA]: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.' Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.

This passage in fact *supports* the trial court's holding, in that as a matter of contract law of the State of Missouri, unconscionable provisions in contracts will not be enforced. "Under the FAA, written agreements to arbitrate are 'enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kansas City Urology, P.A. v. United Healthcare Services,* 261 S.W.3d 7, 14 (Mo.App. W.D.2008), quoting 9 U.S.C. Section 2. Accordingly, generally applicable contract defenses, such as unconscionability, can invalidate an arbitration agreement. *Kansas City Urology,* 261 S.W.3d at 14, citing *Whitney,* 173 S.W.3d at 308.

Based on the foregoing authority, we find that the class action waiver in the mandatory arbitration clause of Appellant's form loan contract of adhesion is unconscionable, as the loan contract is formed in a setting of procedural unconscionability, as set forth above, and in repeated situations in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. See, e.g., *Laster v. T–Mobile USA, Inc.,* 407 F.Supp.2d 1181, 1191–92 (S.D.Cal.2005); *Discover Bank,* 36 Cal.4th at 162–163, 30 Cal.Rptr.3d at 87, 113 P.3d at 1110. To hold otherwise would indeed allow Appellant to continue imposing "its improper and deceptive charges *ad infinitum* since none of its customers would have a practical remedy to bring about a stop to the conduct." *Whitney,* 173 S.W.3d at 310. As such, this would allow Appellant to grant itself a "get out of jail free card while compromising important consumer rights." *Szetela,* 97 Cal. App.4th at 1101, 118 Cal.Rptr.2d 862. A defendant cannot exculpate itself from liability unless the language is clear and unambiguous. *Alack v. Vic Tanny Intern. of Mo., Inc.,* 923 S.W.2d 330, 337–38 (Mo. banc 1996). Here, because this Court concludes the mandatory arbitration class action waiver clause does serve to immunize Appellant, any exculpatory language cannot be enforced against Respondent.

As such, Point III is denied.

### Point IV—Severability

Whether a contract is severable in this manner depends on the circumstances of the case and is largely a question of the parties' intent. *Shelbina Veterinary Clinic v. Holthaus,* 892 S.W.2d 803, 806 (Mo.App. E.D.1995).

Appellant maintains that the trial court erred when it severed the waiver of class action clause from the contract,[2] because the waiver of class action is essential to the contractual bargain, in that it is integral to Appellant's promise to pay all arbitration fees. Appellant points to the contract's unconditional promise to pay for the filing, administrative, and arbitrator's fees, regardless of the result, and argues that the purpose of this promise is to ensure that disputes could be resolved cheaply and expeditiously for both the customer and Appellant, and that class arbitration is

---

**2.** Specifically, the trial court severed the portions of paragraphs 2(c) and 3, which prohibit class arbitrations, as unconscionable and unenforceable.

more expensive and unwieldy than even class litigation, therefore defeating the purpose of the promise to pay all fees. In summary, Appellant claims that unexpected class arbitration fundamentally alters the bargain because it forces Appellant to pay excessive arbitration expenses not contemplated in the contract, which Appellant never intended to obligate itself to do.

An arbitration clause that defeats the prospect of class-action treatment in a setting where the practical effect affords the defendant immunity is unconscionable. *Whitney*, 173 S.W.3d at 309. As such, it is not enforceable. Accordingly, the trial court severed the class action waiver from the arbitration clause in the contract. After arguing that its arbitration clause is fair and enforceable at the trial court, Appellant now apparently seems to argue that the whole arbitration clause should be struck, because the class action waiver portion is not severable. Appellant did not make this argument at the trial court level. Furthermore, this argument is disingenuous. Appellant's argument is essentially that without the unconscionable portion of its arbitration clause in effect, it is going to cost Appellant more to arbitrate and defend its alleged illegal practices.

Based on the circumstances of this case, with due consideration given to the parties' respective intents, we find that the severing of the unconscionable portion of Appellant's loan contract was not error. Accordingly, Point IV is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and CLIFFORD H. AHRENS, J., concur.